## STATE v. ERICKSON.

No. 2819. Decided January 14, 1916. (154 Pac. 948.)

1. INDICTMENT AND INFORMATION—SUFFICIENCY—PRACTICING WITH-OUT AUTHORITY—STATUTE. An information for practicing medicine without a license, charging the offense in the language of Laws 1911, c. 93, was not insufficient, under Comp. Laws 1907, secs. 4730, 4732, providing that every information must contain a sufficient statement of the acts constituting the offense and the particular circumstances necessary to constitute a complete offense. (Page 453.)

2. STATUTES—TITLE—CONSTITUTIONALITY. Laws 1907, c. 88, entitled "An act for the regulation of the practice of medicine and surgery and for the appointment of a board of medical examiners in the matter of such regulation, and providing for the repeal of" certain statutes for the regulation of the practice of medicine and surgery, comprehending provisions defining the practice of medicine, prescribing the qualifications to practice, requiring a license to practice, and making it unlawful to practice without one, creating a board of medical examiners, and prescribing its duties and powers, was not violative of Const. art. 6, sec. 23, requiring that the subject of an act be clearly expressed in its title. (Page 454.)

3. PHYSICIANS AND SURGEONS—PRACTICING WITHOUT AUTHORITY—SUFFICIENCY OF EVIDENCE. In a prosecution of a chiropractor for practicing medicine without a license, evidence *held* sufficient to justify a finding that defendant for a fee diagnosed, treated, and operated upon a physical or abnormal ailment and condition of another, thus practicing medicine as defined by Laws 1907, c. 88. (Page 454.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie*, Judge.

P. E. Erickson was convicted of practicing medicine without a license, and he appeals.

AFFIRMED.

*Parley Jensen* and *B. N. C. Stott* for appellant.

*A. R. Barnes, Atty. Gen.*, and *E. V. Higgins* and *G. A. Iverson, Asst. Attys. Gen.* for the State.

STRAUP, C. J.

The defendant was convicted of practicing medicine without a license, and appeals. The information is that he did "willfully and unlawfully," on a day and at a place specified, "practice medicine without holding a lawful certificate or license issued by the state board of medical examiners of the state of Utah, by then and there diagnosing, treating, operating upon, and adjusting for the physical ailments of one Thomas E. Browning for a fee of two dollars, then and there paid by the said Thomas E. Browning to, and received by," the defendant. The offense is stated in the language of the statute (Laws 1911, p. 135) defining the practice of medicine. It is contended that the information is insufficient because it does not, as provided by C. L. 1907, Sections 4730, 4732, contain a sufficient "statement of the acts constituting the offense," nor "the particular circumstances necessary to constitute a complete offense," and that, under the ruling of *State* v. *Topham*, 41 Utah 39, 123 Pac. 888, the information must be held bad. The rule, of course, is familiar that an information must fully state the offense, and, if the statutory words do not suffice for that it must be expanded beyond them. But here, the statute itself defines the offense by the use of words which have a well-recognized meaning, and itself designates the particular acts or means whereby the offense may be committed. Under such circumstances, to charge the offense substantially in the language of the statute

is sufficient. Had the statute but declared that any person "practicing medicine" without a license or certificate was guilty of an offense, then it might well be argued that an information stating the offense must, to be good, be expanded beyond the language of the statute. But the statute itself defines what shall be regarded as "practicing medicine." It is:

"Any person shall be regarded as practicing medicine within the meaning of this title, who shall diagnose, treat, operate upon, or prescribe or advise for, any physical or mental ailment or any abnormal, mental, or physical condition of another, after having received or with the intent to receive therefor, either directly or indirectly, any fee, gift, compensation or other pecuniary benefit, reward or consideration," etc.

Under such a statute, to charge in the language of the statute suffices. To require more would require the setting forth of evidence.

A further point made is that the act itself is unconstitutional because the subject is not, as required by section 23, art. 6, of the Constitution, clearly expressed in its title. The title, chapter 88, Laws 1907, is "An act for the regulation of the practice of medicine and surgery in the State of Utah, and for the appointment of a board of medical examiners in the matter of such regulation and providing for the repeal of" certain named sections of R. S. 1898, and as stated in chapter 93, Laws 1911, "An act amending" a number of specified sections of "C. L. 1907, for the regulation of the practice of medicine and surgery." Under that, we think enactments defining the practice of medicine, prescribing the qualifications to practice, requiring a license to practice and making it unlawful to practice without one, and creating a board of medical examiners and prescribing its duties and powers are all within, and germane to, the title.

Another point made is that the defendant was not practicing medicine within the meaning of the statute. He is what is known as a chiropractor, and practiced what is known as chiropractic. He, as such, maintained an office at Salt Lake City. Browning, the person named in the information, sprained his foot or ankle working in a mine. He called on the defendant at his office. The defendant examined

his ankle and foot, which were in "a swollen and black and blue condition." He had Browning strip to the waist and lie on a table, and then began to manipulate his spine. When "he came to a particular spot, he gave it a hard press, and then a little farther down gave another." He continued that operation for a considerable time and then operated a vibrator up and down the back. He explained to the patient that the trouble was in the nerve centers of the third lumbar verte- bra, and that the nerve forces had been shut off, and that there was not sufficient nerve energy to heal the leg, and that he would have to readjust that particular lumbar and get it in its proper place, and that then there would be a sufficient flow of nerve energy to heal up the leg. He also advised Brown- ing on retiring to wrap a towel saturated with strong salt brine around the foot. The defendant gave him but one treat- ment or adjustment. Browning testified that his foot, or ankle, had "just turned on me, and it was months before it recovered; I had to wear a whalebone brace on it," but not that the defendant put it on or advised it. He further testi- fied that the defendant did not tell him that he had a sprain or that he had any disease. Browning paid the defendant two dollars for the adjustment or treatment.

The defendant testified that:

"I do not practice surgery; I do not diagnose diseases; I do not operate on people; and I do not treat them for diseases."

He further testified that:

After Browning had removed his clothing, "I found an af- flicted lumbar region. He asked me what it would cost to have a chiropractic adjustment. That is what he paid the two dol- lars for. I placed him on a two-piece table so as to have access to the spinal or back region, and adjusted his lumbar from the left to the right. I did that with my empty bare hands. I did not diagnose any disease; did not administer drugs, prescribe medicine, nor perform any surgical operation. * * * I have an office as a chiropractor, and that is my means of liveli- hood. I charge for my labor. I don't know what was the mat- ter with Mr. Browning's foot. I didn't try to find out. I wasn't interested in his foot. When I saw it I knew there was something wrong in the lumbar region. I don't treat diseases.

The effect was in the foot, and the cause in the lumbar. I don't cure anything. When I adjust the lumbar I expect to take away the cause; nature would do the rest.  *  *  *  I adjusted the lumbar on account of the luxation. I believe there are nerves in the human body, and, if one of the lumbars is pushed to one side, it would very likely effect the nerve, and according to our system we adjust the lumbar to relieve that nerve pressure.''

We think this evidence justified a finding that the defendant practiced medicine within the meaning of the statute; that he, for a fee, diagnosed, treated, and operated upon a physical or abnormal ailment or condition of another. What, as to this question, we said in the case of *State Board of Medical Examiners* v. *Freenor*, 47 Utah, 430, 154 Pac. 941, just decided, also applies here.

The judgment therefore is affirmed.

FRICK and McCARTY, JJ., concur.