(No. 6072. May 16, 1934.)

STATE, Respondent, v. W. O. JOHNSON, Appellant.

[32 Pac. (2d) 1023.]

D. E. Rathbun, for Appellant.

Bert H. Miller, Attorney General of Idaho, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

GIVENS, J.—The defendant for a number of years had been a real estate broker. In 1932, however, he did not obtain a license to act as a real estate broker as required by title 53, chap. 22, I. C. A. About March 1st, of said year he approached or was approached by Gustave Lang relative to the purchase by Lang of certain real property then belonging to a Mrs. Christensen. An "earnest money receipt" was made out signed by Lang as purchaser and by Johnson as "agent" for the owner; $150 being paid down on the purchase price of $3,000. Thereafter the defendant by written contract signed by himself and Mrs. Christensen, agreed to purchase the land

in question for $3,000; title to be perfected by Mrs. Christensen, necessitating the probate of her husband's estate. The land was then and had been for six years, since the death of Mrs. Christensen's husband, occupied by her brother-in-law.

Defendant negotiated with Mrs. Christensen for the purpose of having the estate probated, served two notices on her behalf on her brother-in-law requiring him to vacate the property, and held several conferences with the interested parties but for various reasons not material here the entire deal finally collapsed, though the defendant retained the $150.

No point is made that the evidence is not sufficient to support the conviction.

Defendant was convicted in the probate court where the action was instituted, appealed to the district court, again convicted and is now here on assignments of error culminating in three points, first, that the complaint was deficient in that it did not charge that the defendant was to receive or was promised compensation. The complaint followed the language of the statute charging and defining the crime of "acting as a broker" and specifying the particular transaction involved with sufficient minuteness to bar another prosecution on the same transaction, and therefore sufficiently complied with section 19–4001, I. C. A. (*State v. O'Neil*, 24 Ida. 582, 135 Pac. 60; *State v. McMahon*, 37 Ida. 737, 219 Pac. 603; *State v. Bowman*, 40 Ida. 470, 235 Pac. 577; *State v. George*, 44 Ida. 173, 258 Pac. 551; *State v. Farnsworth*, 51 Ida. 768, 10 Pac. (2d) 295; *State v. McDermott*, 52 Ida. 602, 17 Pac. (2d) 343; *State v. Miller*, 54 Or. 381, 103 Pac. 519; *People v. Welton*, 190 Cal. 236, 211 Pac. 802; *People v. Rosenbloom*, 119 Cal. App. (Supp.) 759, 2 Pac. (2d) 228; *Fealy v. City of Birmingham*, 15 Ala. App. 367, 73 So. 296; *Byrd v. State*, 72 Tex. Crim. Rep. 242, 162 S. W. 360. See, also, *State v. Erickson*, 47 Utah, 452, 154 Pac. 948; *Blalock v. State*, 112 Ga. 338, 37 S. E. 361.)

■ It was of course essential that the evidence show that the defendant acted for compensation or promise thereof, which his own testimony did.

Direct examination of the appellant W. O. Johnson:

"Q. Why, Mr. Johnson, when you did this were you doing it without a profit?

"A. If Mr. Lang had paid me the thirty-five hundred dollars he agreed to pay originally, when I bought the land for three thousand dollars, I would have had a profit, but Mr. Lang in the nineteen days from the first of the month, the first of March until the nineteenth, was unable to make his deal the way he wanted to with Mr. Meppen, and the most I was able to sell it to Mr. Lang for was three thousand dollars, consequently there was no profit between the purchase price of the land and the amount I sold it for.

"Q. Why did you go to that trouble when you was making no profit?

"A. Well, I got into the deal and had gone that far and there wasn't any further trouble in order to complete it. I figured I might get something out of it, getting the personal property fixed up, and the probation of the estate fixed up, I might get something out of that."

No complaint is made of the instructions, in connection with this matter, which required such proof as a prerequisite to conviction.

■ Before the commencement of the trial the state, over defendant's objection was granted leave to amend the complaint by striking out the word "feloniously" and correcting the complaint to show it was in fact H. D. Kingsbury and not Gustave Lang who swore to it. In addition to other sufficient approving reasons, the defendant has neither shown nor suggested any prejudice therefrom, hence, there is in this particular no cause for reversal. (*State v. Corcoran*, 7. Ida. 220, 61 Pac. 1034; *State v. Hunsaker*, 37 Ida. 413, 216 Pac. 721; *State v. Abbott*, 38 Ida. 61, 213 Pac. 1024, 224 Pac. 791; *State v. McLennan*, 40 Ida. 286, 231 Pac. 718.)

■■■■ Defendant urges that section 53–2204, I. C. A.,
makes "offering to sell real estate" a crime and that
one may not be guilty of an attempt to act as a broker,
but that the only uncompleted offense one could properly
be convicted of is "an offer to sell" or kindred acts speci-
fied in section 53–2204, I. C. A. This argument misconceives
the crime charged. Under sections 53–2204 and 53–2215,
I. C. A., there is no crime of "offering to sell real estate"
as such, there is only the crime of "acting as a real estate
broker"; this crime may be committed by doing any one
or more of the things enumerated in section 53–2204,
I. C. A. As to section 53–2215, I. C. A., the general
statutes sections 17–306 and 19–2212, I. C. A., with regard
to attempts apply, and if only an attempt be shown and
not a completed act the defendant may be convicted of
"attempting to commit" the crime of "acting as a real
estate broker" as in any other criminal offense. (16 C. J.
112.) The analysis in *People v. Marks,* 24 Cal. App. 610,
142 Pac. 98, 99, clearly sustains the conclusion that appel-
lant was legitimately convicted of an attempt:

"Finally, the defendant contends that the verdict is
invalid, for the reason that there is no such crime under
our statutes as an attempt to commit pandering, and that,
if there be such a crime, provision is made by law for
its punishment as a substantive offense, and not as an
attempt.

"In support of this position defendant cites section 664
of the Penal Code. That section reads as follows:

"'Every person who attempts to commit any crime, but
fails, or is prevented or intercepted in the perpetration
thereof, is punishable, where no provision is made by law
for the punishment of such attempts as follows. . . . . '

"It will be observed that this section is not concerned
with defining crimes or attempts to commit crimes, but
merely with the punishment of attempts to commit them.
The argument of counsel is that the defendant, not having,
according to the verdict of the jury, succeeded in com-
mitting the crime charged, and the acts of which she was

found guilty constituting, as he claims, a substantive crime punishable as such, no punishment can be meted out to her under the verdict of the jury, which designates her offense as an 'attempt.' It is pointed out that the statute defining pandering enumerates a series of a dozen or more acts any one of which may constitute the crime; and he asserts that it is impossible to fail in the attempt to commit one of those acts without succeeding in committing another of them; that consequently, if the jury returns a verdict of attempting to commit one of them, the defendant cannot be punished under such verdict because the acts performed by the defendant in the abortive attempt themselves constitute a substantive crime for which a punishment is specifically provided by law.

"This contention of counsel rests upon two assumptions, with neither of which can we agree: First, that an act performed in the attempt to commit the crime of pandering in one of the methods described in the statute is exactly covered by another of such methods, and can be prosecuted and punished by charging such act alone; and, second, that even if an act done in an attempt to commit a given crime should incidentally elsewhere in the Penal Code be made itself a substantive offense, it cannot be punished as an attempt to commit the given crime.

"We think that the language of section 664, 'where no provision is made by law for the punishment of such attempts,' applies exclusively and must be confined to 'attempts' designated by the statute as such, and does not refer generally to acts done in the attempt to commit one crime, and which, if done without relation to the offense, might be separately punished. For instance, in an attempt to commit burglary a door or window is fractured. Such damage to property might, separately considered, come within the definition of malicious mischief; but the offender convicted of an attempt to commit burglary where burglary was charged would not be heard to say that he could not be punished for such attempt because his fracture of the door or window was itself an offense punishable

by law. And so in the present case, though the acts committed by the defendant might possibly bring her within another description of the offense of pandering, yet, being done in an attempt to commit the particular act charged in the information, she cannot object to having her offense punished as an attempt.''

Judgment affirmed.

Budge, C. J., Morgan, Holden and Wernette, JJ., concur.