(No. 6827. December 2, 1940.)

STATE, Respondent, v. JAMES R. SEDAM, Appellant.

[107 Pac. (2d) 1065.]

Alfred C. Cordon, for Appellant.

J. W. Taylor, Attorney General, and C. M. Jeffery, Prosecuting Attorney, for Respondent.

GIVENS, J.—Upon appeal to the district court from criminal proceedings against him in the justice court for making and issuing a check without funds in the bank to pay it, under section 17–3908, I. C. A.,[1] appellant was convicted upon

---

[1] Sec. 17–3908, I. C. A.: "Any person who with intent to defraud shall make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depositary, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has not sufficient funds in or credit with such bank or other

trial *de novo* after plea of not guilty and sentenced to the county jail.

No demurrer to the information, objection to any evidence or motion in arrest of judgment was made or interposed by appellant upon the ground the information did not state facts sufficient to constitute a public offense: He contends he may now, however, raise the point. Under section 19–1611, I. C. A.,[2] concededly applicable, this court has held such objection must be made in the manner prescribed, i. e., demurrer or motion in arrest of judgment and comes too late when first broached on appeal.

" . . . . In *Territory v. Carland,* 6 Mont. 14, 6 Pac. 578, the court, in passing upon this question, on a statute identical with that of Idaho, say: 'In this case there was a motion in arrest of judgment. It does not, however, appear that this motion was ever acted upon by the court. The appellant did not therefore insist upon his motion, and will be deemed to have waived it. The statute having provided the method of procedure to take advantage of such a defect, that method must be pursued. The objection that the facts stated in the indictment do not constitute a public offense cannot be presented in this court for the first time.' And the same court, in a recent case (*State v. Malish,* 15 Mont. 506, 39 Pac. 737), reiterate and affirm this doctrine, adding the following language: 'The ruling in the Carland case in upholding the statute cited does not hold that a judgment will be sustained upon an information which does not state an offense, nor that such judgment will be sustained upon an information where

---

depositary for the payment of such check, draft or order in full upon its presentation, shall be guilty of a misdemeanor. The making, drawing, uttering or delivery of such check, draft or order as aforesaid shall be *prima facie* evidence of intent to defraud. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depositary for the payment of such check, draft or order."

[2] Sec. 19–1611, I. C. A.: "When the objections declared grounds of demurrer by this chapter appear upon the face of the indictment, they can only be taken by demurrer, except that the objections to jurisdiction of the court over the subject of the indictment, or that the facts stated do not constitute a public offense, may be taken at the trial under the plea of not guilty, or after the trial in arrest of judgment."

it appears that the court has no jurisdiction of the offense. The decision simply recognizes that the statute provides, as it has a right to do, in what court these objections should be made, and that they must be first made in the district court, rather than in the supreme court. Appeals are a matter of statutory regulation.' We are in accord with the Montana court in its construction and application of this statute. Other questions are raised by the record, but, as the decision of this disposes of the appeal, we do not feel called upon to go further in the consideration of the case. The judgment of the district court is affirmed.'' (*State v. Hinckley,* 4 Ida. 490, 493, 42 Pac. 510.)

This case has been approved and followed in *In re Dawson,* 20 Ida. 178, 190, 117 Pac. 696, 35 L. R. A., N. S., 1146, and *State v. Neil,* 58 Ida. 359, 365, 74 Pac. (2d) 586.

A marked distinction is to be noted between the civil and criminal procedure as specified by section 19–1611, *supra,* and section 5–611, I. C. A. Furthermore the criminal complaint[3] was substantially in the language of the statute, which

3 "IN THE JUSTICE COURT OF POCATELLO PRECINCT
COUNTY OF BANNOCK, STATE OF IDAHO.

STATE OF IDAHO,
 Plaintiff,

 vs. COMPLAINT—CRIMINAL

JAMES R. SEDAM,
 Defendant.

Personally appeared before me this 3rd day of Jan. 1940, W. R. Hubble of Pocatello, in the county of Bannock, who, first being duly sworn, complains of James R. Sedam, and charges him with the public offense of issuing a check without funds committed as follows, to-wit: That the said James R. Sedam at Pocatello, in the County of Bannock, and State of Idaho on the 11th day of Dec. 1939, did then and there wilfully and unlawfully and with intent to defraud, make, draw and deliver one certain check, drawn on the First Security Bank of Idaho, Pocatello branch, knowing at the time of such making and delivering that he had no funds in the said bank to cover the payment of such check in the sum of $15.00 lawful money of the United States.

All of which is contrary to the form of the statute in said State made and provided and against the peace and dignity of the State of Idaho.

states the essential elements of the crime, hence sufficient. (*People v. Russell,* 156 Cal. 450, 105 Pac. 416; 31 C. J. 703; *State v. Montgomery,* 48 Ida. 760, 766, 285 Pac. 467; *State v. George,* 44 Ida. 173, 176, 258 Pac. 551; *State v. McMahon,* 37 Ida. 737, 219 Pac. 603; *State v. Johnson,* 54 Ida. 431, 32 Pac. (2d) 1023; *State v. Huff,* 56 Ida. 652, 656, 57 Pac. (2d) 1080.)

Appellant's assignment of error that Exhibit ''C,'' a transcript of the proceedings in the justice court was admitted in evidence to his prejudice is groundless because it was not admitted, the trial court sustaining his objection thereto.

Exhibit ''F,'' a certified copy of the justice court docket in this case was admitted in evidence, but its admission is not assigned as error, the assignment going only to Exhibit ''C'':

''VIII.

''The court erred in admitting in evidence the record of proceedings in the Justice court, State's Exhibit 'C.', showing that defendant pleaded guilty.''

No authorities are cited on this point and it is not argued in the brief. This alone obviates any consideration thereof (*State v. Richardson,* 56 Ida. 150, 50 Pac. (2d) 1012; *State v. Snoderly,* 61 Ida. 314, 101 Pac. (2d) 9) but there are other cogent reasons which completely dispose of it.

A plea of guilty to the same offense is an admission of guilt and admissible. (*State v. Call,* 100 Me. 403, 61 Atl. 833 (1st case); *State v. Giles,* 81 N. H. 328, 125 Atl. 682; *Commonwealth v. Ervine,* 8 Dana (Ky.), 30; 16 C. J. 613, sec. 1204.) It is evidently not seriously contended the plea of guilty was inadmissible since no assignment of error raises the admission of this exhibit and we can only speculate on what error is claimed, but evidently it is considered the method was incorrect and that the oral testimony of some bystander is superior to the written records of a justice court

Said complainant therefore prays that a warrant may be issued for the arrest of said James R. Sedam, and that he may be dealt with according to law.

(Signed) W. R. HUBBLE.

Subscribed and sworn to before me this 3rd day of Jan. 1940.

WILLIAM HINCKLEY, Justice of the Peace of said Precinct.''

as to what took place in a criminal case admittedly within the jurisdiction of the justice.

Section 19–4004, I. C. A., provides (in criminal cases):

"A docket must be kept by the justice of the peace, or by the clerk of the probate court, in which must be entered each action and the proceedings of the court therein."

And section 19–4005, I. C. A.:

"The defendant may make the same plea as upon an indictment. His plea must be oral, and entered in the minutes. If the defendant plead guilty, the court may, before entering such plea or pronouncing judgment, examine witnesses to ascertain the gravity of the offense committed; and if it appears to the court that a higher offense has been committed than the offense charged in the complaint, the court may order the defendant to be committed or admitted to bail, to answer any indictment which may be found against him by the grand jury."

Exhibit "F" shows this record[4] and that the statute was explicitly followed. Justice Hinckley died before the trial in the district court. (Sec. 57–1001, I. C. A.)

---

[4] "JUSTICE'S CRIMINAL DOCKET

IN THE JUSTICE COURT OF POCATELLO PRECINCT, COUNTY OF BANNOCK, STATE OF IDAHO.

2691 Before William Hinckley, Justice of the Peace.

| The State of Idaho, Plaintiff, vs. JAMES R. SEDAN, Defendant. | Nature of Action Check—No Funds. Papgers Served by A. S. Horrocks, Const. Attorneys Entered C. V. Boyatt C. M. Jeffery. |

Personally appeared before me Jan. 3, 1940, W. R. Hubbell of Pocatello, who first being duly sworn complains of James R. Sedan and charges him with the public offence of 'issuing a check without funds.'

Warrant issued Jan. 3, 1940.

Now on the 31st day of Jan. 1940, the defendant was brought before the court the complaint was read to him and he was advised of his statutory rights in the premises.

He did then and there pleade "quilty"— * * *

Section 16–301, I. C. A., is as follows:

"Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute."

Section 16–302, I. C. A.:

"Every public officer having the custody of a public writing, which a citizen has a right to inspect, is bound to give him, on demand, a certified copy of it, on payment of the legal fees therefor, and such copy *is admissible as evidence in like cases* and with like effect as the original writing. . . . . " (Emphasis ours.)

and section 16–310:

"A judicial record of this state, or of the United States, may be proved by the production of the original, or by a copy thereof, certified by the clerk or other person having the legal custody thereof. That of another state or territory may be proved by the attestation of the clerk and the seal of the court annexed, if there be a clerk and seal, together with a certificate of the chief judge or presiding magistrate, that the attestation is in due form.",

justified the presentation and admission of the certified copy of the minutes of the justice court, *supra.* Section 16–309, I. C. A., classifies as a public writing this judicial record.

Section 16–320, I. C. A.:

"An entry made by an officer, or board of officers, or under the direction and in the presence of either, in the course of official duty, is *prima facie* evidence of the facts stated in such entry."

certainly makes this record admissible, as *prima facie,* not secondary evidence. This court early held such a record admissible. (*Keenan v. Washington Liquor Co.,* 8 Ida. 383, 389, 69 Pac. 112.) This rule has been recognized by other courts. (*Bibb v. State,* 83 Ala. 84, 3 So. 711, 714; *Loman v. State,* 19 Ala. App. 611, 99 So. 769 (4th case) at 770;

I hereby certify that the above is a correct copy of my docket in the above entitled case in so far as the transcript goes.

Dated this 31st day of May, 1940.

/s/ Charles W. Hyde

JUSTICE OF THE PEACE"

*State v. Whitehead,* 88 Wash. 549, 153 Pac. 349; *Commonwealth v. Ervine, supra.*)

" . . . . If appellant had pleaded guilty to a charge of vagrancy, the court papers and dockets should be used to show that fact." (*Bowman v. State,* 73 Tex. Cr. R. 194, 164 S. W. 846 (2d case) at 848.)

"Where a justice of the peace has acquired jurisdiction, the only competent evidence of the proceedings had is the record required by law to be made, . . . . " (*Uhlenhake v. State,* 58 Okla. Cr. 248, 52 Pac. (2d) 117, 120; *Whitwell v. State,* 65 Okla. Cr. 178, 83 Pac. (2d) 881, 885; *Gittens v. Whelchel,* 12 Ga. App. 141, 76 S. E. 1051; *Kerstetter v. Thomas,* 36 Wash. 620, 79 Pac. 290.)

"Where there is written evidence of a fact in issue, the writing, whether required by law or not, is as a general rule the best evidence. . . . .

"The record thereof is the best evidence of judgments and court proceedings generally. . . . . " (16 C. J. 612, secs. 1203 and 1204; 22 C. J. 794, sec. 906; 22 C. J. 797, sec. 908; 35 C. J. 715.)

It is thus clear that under the above statutes and decisions the records of a justice court are admissible as the best evidence of proceedings had therein in criminal cases of which a written record is made as required by statute.

The defendant was given full opportunity to explain his version of what took place in the justice court and admitted he issued the check in question and that he "thought the money was there," i. e., in the bank to pay the check, though the evidence conclusively showed it was not. His denial of intent to defraud merely raised an issue of fact which, from his course of conduct in the issuance of checks without regard to whether he had funds in the bank to pay them or not, the jury found against him.

Other checks unpaid for want of funds issued shortly after the one in question and when appellant's depleted and exhausted bank account had not been replenished were properly admitted as evidence of his intent to defraud, a necessary ingredient of the offense. (*People v. Weir,* 30 Cal. App. 766, 159 Pac. 442; *People v. Bercovitz,* 163 Cal. 636, 126 Pac. 479, 43 L. R. A., N. S., 667; *State v. Lowe,* 50 Ida. 96, 294 Pac.

339; *State v. Emory*, 55 Ida. 649, 654, 49 Pac. (2d) 67; *State v. Dunn*, 60 Ida. 568, 94 Pac. (2d) 779.)

Appellant contends he was compelled to testify against himself in violation of article 1, section 13 of the Constitution, in that he was asked upon the trial to, and did, produce one of these other checks. The record on this point is as follows:

During the examination of Mrs. T. J. Sedam, mother of appellant, to whom he gave the check upon which the prosecution rests, and others, called as a witness by the state:

"Q. Did you receive other checks from your son and cash them?

"A. I did.

"Q. How many?

"A. I don't know.

"Q. Do you remember one at the Peoples Store?

"A. Yes.

"Q. Have you that check here?

"A. No, I haven't.

"Q. Do you know where the check is?

"A. No, I don't know, but I know it has been taken care of.

"Q. Did you see the check as late as yesterday?

"A. No.

"Q. Have you the Peoples Store check with you, Mr. Cordon?

"The COURT: I will grant an order directing the defense to produce it.

"Mr. JEFFERY: We had it down in court not later than two days ago.

"Mr. CORDON: The defendant says he will try and get it, your Honor.

"The COURT: At the first recess. You may proceed."

And during the examination of Ivan Gasser, a witness for the state:

"Q. And did you have occasion to accept a check on or about the 23rd of December, last year, given by one James R. Sedam?

"A. Yes, sir.

"Q. In what amount?

"A. $25.00 I think.

"Q. And what, if anything, was done with that check?

"Mr. CORDON: We object to this question, Your Honor, and all of them relating to this transaction, on the ground immaterial, irrelevant and incompetent, and unduly prejudicial, and not relating to the issues in this case.

"The COURT: Objection will be overruled to this question, and if counsel wish it I will deem the objection is made to any other questions concerning incidents similar to the transaction set up in the case but so far as any other grounds of objection they will have to be made to each individual question.

(Question repeated by reporter for witness.)

"A. We deposited the check.

"Mr. CORDON: Now, your Honor, we object to this on the ground it is not the best evidence.

"The COURT: He has answered the question, Mr. Cordon?

"Mr. CORDON: We ask it be stricken on the ground it is not the best evidence.

"The COURT: I will strike it for the purpose of your objection. It may be so stricken then if you will state your objection.

"Mr. CORDON: I object to it on the ground the proof is not the best evidence.

"The COURT: He may answer. That is if he deposited it yourself, you did yourself, Mr. Gasser?

"A. Yes, sir.

"Mr. JEFFERY, resuming:

"Q. Then what happened?

"The COURT: The former answer was stricken, will you answer the question again?

"A. I deposited the check in the bank.

"Mr. JEFFERY, resuming:

"Q. And then what happened to this particular check?

"A. It was returned to us.

"Q. And did you get in touch with Mrs. Sedam?

"A. Yes, sir.

"Q. And how many times?

"A. Oh, four times I would say.

"Q. Then what did you do with the check?

"A. I turned it over to you.

"Q. Was it later returned by my office to you?

"A. I don't remember whether it was or not.

"The COURT: I think, Mr. Cordon, I shall not entertain the objection, the general objection to the line of testimony any more. I can see some danger in it so that from now on I will ask you to make your objections to each question.

"Mr. CORDON: Very well.

"Mr. JEFFERY: I am wondering if we couldn't take a short recess and get these checks here in court and save a lot of time.

"Mr. CORDON: We don't think the county attorney should ask this of the court. The witnesses are all here and the jury is here. Do you have other checks?

"Mr. JEFFERY: Yes, but none other than we have asked Mrs. Sedam about.

"Mr. CORDON: If the court wishes it the defendant will get the checks.

"The COURT: The court doesn't express any wish. The court is somewhat concerned about the check exhibited to the court the other day but—

"Mr. CORDON: The Peoples Store Check?

"The COURT: Yes, the one counsel exhibited to the court.

"Mr. JEFFERY: Counsel will recall three others laid on the table at the time.

"The COURT: Ordinarily we do not require the defendant to produce evidence against himself but in that particular case we was using that check in his behalf of a proceeding initiated by him in this case.

"Mr. CORDON: I will say that at the first recess I will ask the defendant to find that check."

Conceding without deciding appellant could not only have been compelled to produce this check, which evidently had been in Mr. Gasser's and the prosecuting attorney's possession, not only was no objection made that to produce the check violated any of appellant's constitutional rights, but he voluntarily offered to and did produce it. Such constitutional rights may be waived and in the absence of objection no error is presented for our consideration. (*State v. Gruber,* 19 Ida. 692, 115 Pac. 1; *State v. Peters,* 43 Ida. 564, 253 Pac. 842; *State v. McClurg,* 50 Ida. 762, 300 Pac. 898, 899; *State v. West,* 42 Ida. 214, 217, 245 Pac. 85.)

 Appellant does not assign as error the failure or refusal of the trial court to discharge or stay the proceedings herein nor its refusal to grant a parole and it is not asserted the trial court abused its discretion in not so doing.

" . . . . In the absence of a clear abuse of discretion the action of the trial court will not be reviewed. . . . . " (*State v. Neil*, 58 Ida. 359, 364, 74 Pac. (2d) 586; *State v. Yockey*, 57 Ida. 497, 66 Pac. (2d) 111; *In re Bolitho*, 51 Ida. 302, 6 Pac. (2d) 855; *State v. Raponi*, 32 Ida. 368, 182 Pac. 855; *State v. Arnold*, 39 Ida. 589, 229 Pac. 748.)

 The evidence is amply sufficient to sustain the conviction which is accordingly affirmed.

Morgan and Holden, JJ., concur.

BUDGE, J., Dissenting.—Appellant drew a check on a bank, in which he had an account, for $15 and gave it to his mother who presented it to Mr. Hubble who cashed it. When the check was presented to the bank by Mr. Hubble payment was refused because of insufficiency of funds in appellant's account. Thereafter Mr. Hubble called upon the mother of appellant to reimburse him for the amount of the check. It is fair to conclude from the record that due to impoverishment of the family the mother was not in a position to immediately take up the check. Some time thereafter Mr. Hubble signed the criminal complaint referred to in the majority opinion. Appellant was arrested, tried before the district court and jury, found guilty and was sentenced to serve six months in the county jail. Before the trial the check referred to was taken up and prior to the trial Mr. Hubble petitioned the court in writing to dismiss the charge which was refused. Appellant issued several other small checks and gave them to his mother and the same were cashed under similar or like circumstances as was the check cashed by Mr. Hubble. However no criminal charges were filed against appellant by other parties injured by reason of his drawing checks on the bank without funds. All of the checks so drawn by appellant were later taken up, some of them on the instalment plan. During the course of the trial the following proceedings occurred and the following questions were asked appellant's mother by the county prosecuting attorney.

"Q. Did you receive other checks from your son and cash them?

"A. I did.

"Q. How many?

"A. I don't know.

"Q. Do you remember one at the Peoples Store?

"A. Yes.

"Q. Have you that check here?

"A. No, I haven't.

"Q. Do you know where the check is?

"A. No, I don't know, but I know it has been taken care of.

"Q. Did you see the check as late as yesterday?

"A. No.

"Q. Have you the Peoples Store check with you, Mr. Cordon?

"The COURT: I will grant an order directing the defense to produce it.

"Mr. JEFFERY: We had it down in court not later than two days ago.

"Mr. CORDON (Attorney for appellant): The defendant says he will try and get it, your Honor.

"The COURT: At the first recess. You may proceed."

Further on in the record the court inadvertently made the following remark:

"The COURT: Ordinarily we do not require the defendant to produce evidence against himself but in that particular case he was using that check in his behalf of a proceeding initiated by him in this case."

Just what effect these remarks of the court had upon the jury cannot be determined. It may well have been that in the absence of the remarks of the court the jury would have found appellant not guilty. However, it would hardly seem, in view of the remarks made by the court and the court's imperative order directing the defense to immediately produce the check afforded the appellant a fair and impartial trial. If the check was admissible in evidence the court required appellant to produce evidence against himself in violation of his constitutional rights. I merely call attention to this situation in view of what will be said hereafter.

Section 19–2721, I. C. A., provides:

"The court may reverse, affirm, or modify the judgment or order appealed from, and may set aside, affirm or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial."

Section 19-3301, I. C. A., provides as follows:

"When a defendant is held to answer on a charge of misdemeanor, for which the person injured by the act constituting the offense has a remedy by a civil action, the offense may be compromised as provided in the next section, . . . . "

Section 19-3302, I. C. A., is as follows:

"If the party injured appears before the court to which the depositions are required to be returned, at any time before trial, and acknowledges that he has received satisfaction for the injury, the court may, in its discretion, on payment of the costs incurred, order all proceedings to be stayed upon the prosecution, and the defendant to be discharged therefrom; . . . . "

In view of what has heretofore been said and that all of the checks had been paid and all parties had received satisfaction before the trial, including the one complaining witness who petitioned the court to dismiss the criminal proceedings, justice tempered with mercy would justify invoking the provisions of section 19-2721, I. C. A., as well as the amendment to section 19-4021, I. C. A. (chap. 60, 1937 Sess. Laws, p. 82), which is as follows:

"When the defendant pleads guilty, or is convicted either by the court or by a jury, the court must render judgment thereon of fine or imprisonment, or both, as the case may be; provided, however, it appearing to the court that it is a proper case, the court may, in its discretion, suspend the execution of judgment or withhold judgment on such terms and for such time as it may prescribe and in either event may put the defendant on probation."

It would seem to me that the judgment committing the appellant to the county jail for six months should be modified and that this is a proper case calling into action the discretion of the trial court, and the judgment should be that appellant pay all the costs incurred and be placed on probation. Appellant, his wife and child were living at his mother's home

at the time he issued the checks. It may be inferred that his financial circumstances were such that this was necessary. To confine him in the county jail for six months and thus deprive him of earning support for his wife and child would be to inflict an unnecessary hardship upon those dependent upon him. In *State v. Neil*, 13 Ida. 539, 554, 90 Pac. 860, 91 Pac. 318, the following language is used, which I now think applicable to the instant case:

"It is both the spirit and intention of our laws that sentence shall be imposed in criminal cases for the protection of society and the reformation of the culprit. As we view this whole case, two years' imprisonment of the defendant will be as much protection to society and do him as much good as would ten. Ten years would practically ruin him for life. He is a young man yet, and it is to be hoped that this experience will serve to reshape and reconstruct his views regarding his duties and obligations to those about him, and possibly inspire him with some higher and better notions. . . . . We have concluded to modify the sentence to the extent of reducing it to a term of two years in the state penitentiary."

The judgment when so modified should be affirmed.

AILSHIE, C. J. Dissenting.—This case ought to be either dismissed or reversed and sent back to the trial court for further proceedings. Based upon a view of the whole record, I am impressed with the feeling that appellant has not had that fair and impartial trial which the law accords to every accused person. The contention that the record of the justice's court was admissible in this case on appeal, to prove confession of guilt, is so extraordinary that I deem it proper to make some comment on it.

Here is a case of a 20-year old boy, with a wife and one child, who issued a $15 check to his mother in payment of a board bill. The mother cashed the check at the office of the Pocatello Auto Company and when the company presented it to the bank, appellant had only two cents credit in his account at the bank. The cashier of the auto company filed (evidently for collection purposes), a complaint in the justice's court, charging defendant with issuing a check with-

out funds in the bank to meet it. The constable was sent out and arrested defendant and took him before the justice of the peace, and here is his undisputed testimony as to what occurred when he was taken into court:

Q. "Now, what did you do?

A. "And Judge Hinckley told me what the complaint was; he didn't read it. He told me I was charged with issuing a check without funds to cover it, and he asked me how I plead and I said I guess I wrote the check, and I started to say I didn't intend to defraud anyone, or gyp anyone out of their money, and he cut me off short and said the judgment of this court is to serve ninety days in the county jail.

Q. "Was there anything further said there?

A. "Yes, sir. I knew he was in possession of the check. I guess he had gotten it along the first of January, I don't know about that, but on several different occasions he had promised to wait until the first of February before doing anything he would give me until the first of February to pay it, and my mother called him and he said the same thing to her, and my wife called and he said the same thing to her, but when I was brought into his court he said pressure was brought on him and he couldn't help it."

It is admitted that appellant had an account at the bank on which this check was drawn and that he had made a deposit of $125 November 28th and a further deposit of $25 November 29th, and this check was drawn on December 11th. In the meanwhile the deposit had been reduced to a balance of two cents. The justice of the peace sent defendant to jail for a period of ninety days without further ceremony. The defendant or his wife or mother, or someone, succeeded in paying the check and getting an attorney to prosecute an appeal from the justice's judgment to the district court. Before the case was called for trial in the district court, the check having been paid, *all the parties interested* (in the collection) joined in requesting a dismissal of the case. (See secs. 19–3301, 19–3302.)

At the trial, this so-called "Justice's Criminal Docket" (set out as note No. 1 in the majority opinion) was introduced in evidence before the jury *as proof of a confession of guilt*. And just here it should be remembered that this document

was introduced *as a part of the state's case in chief;* and no testimony was taken whatever prior to the introduction of this document, showing or tending to show the surrounding circumstances or facts under which the so-called admission or confession was made or when or by whom the record was entered. The judge, who is supposed to have made this entry, was not in the courtroom or examined, and it was certified by his successor in office, who personally knew nothing about the case. Moreover, a justice's court *is not a court of record* under the Idaho statute. (Secs. 1–101, 1–102, I. C. A.) The plea of guilty (if made in the justice's court) was vacated by the appeal and the case went to trial on appeal as on a plea of not guilty.

It has heretofore been held by this court that an appeal may be taken from the judgment of a justice's or probate court in a criminal case, irrespective of whether a plea of *guilty* or *not guilty* was entered in that court. (*State v. Dawn,* 41 Ida. 199, 203, 239 Pac. 279; *State v. Stafford,* 26 Ida. 381, 143 Pac. 528].) Here we have the anomaly of the defendant appealing to the district court from a judgment of conviction had in the justice's court and, when his case comes on for trial on appeal, introducing the *record* of the proceeding made by the justice court as evidence against him *on appeal from the judgment in the same case.*

It should be remembered that this so-called record was not introduced for the purpose of *contradicting* something the defendant had testified to,—he had not yet testified at all. It was clearly introduced for the purpose of proving a confession or admission of guilt. It is fundamental that a confession or admission of guilt cannot be proven by what *somebody else has written.* It can only be proven by the declaration of the party accused, either made orally or in writing and signed by him. In this case the defendant did not sign anything. The document as introduced was simply an entry supposed to have been made by a justice of the peace, without any evidence whatever as to the surrounding circumstances under which it was made, or whether or not the defendant was present when the entry was made or was questioned or made any other statements or explanations or anything of the kind; and all of which is required to be shown

on the introduction of a confession or admission in a criminal prosecution. . (Underhill, Crim. Ev., 3d ed., sec. 220 et seq.; 2 Wharton, Crim. Ev., 11th ed., secs. 591, 595.)

I have no doubt about the admissibility of any confession or admission the defendant made, if it was done under circumstances sanctioned by the generally accepted rules of law, where the defendant is confronted with the witness or witnesses who testified to the confession or admission; and he is accorded the right of cross-examination as to all things that occurred at the time, disclosing the circumstances under which the confession or admission was made. I do insist, however, that it cannot be lawfully proven by some entry or record made by a justice of the peace or anyone else. Here it is not even shown that this so-called record was written by the justice in whose docket it appeared.

Not a single case is cited in the majority opinion which sustains the admission of a record of a justice court for the purpose of proving confession of guilt as was done in this case. Moreover, some of them are under special statutes. For illustration,—*Keenan v. Washington Liquor Co.*, 8 Ida. 383, 69 Pac. 112, was a civil action to recover on an undertaking given on claim and delivery. The action was originally commenced in the probate court and then appealed to the district court. In the latter court a controversy arose as to whether an original complaint, which had been filed in claim and delivery, was predicated upon the same grounds and right of recovery as an amended complaint which was thereafter filed in the same case and court. This court said (p. 388):

"Upon the trial the court admitted in evidence, over appellants' objections, the original complaint, summons, and affidavit on claim and delivery, notice on claim and delivery, and other original files in the action commenced by the appellant the Washington Liquor Company, as plaintiff, against said constable, Dudley Gilman, in said justice's court; and the court also admitted the pleadings and original files in the action brought by the respondent, Keenan, against said Russell in the probate court, over the objections of said appellants; and the action of the court in admitting such documentary evidence constitutes the grounds upon which the third, fourth,

fifth, sixth, and seventh assignments of error are based. The appellants contend that the admission of such evidence was improper, because the same, being records in the said inferior courts, was not admissible, and that the respondent should have introduced copies of the same. This contention is not well taken. The said records were competent evidence, and properly admitted as such at the trial.''

In *State v. Call*, 100 Me. 403, 61 Atl. 833, the court held, as I contend here, that the confession was properly proven by testimony of witnesses who heard it in the courtroom. It was urged by counsel that it should have been proven by the record. *Uhlenhake v. State*, 58 Okl. Cr. 248, 52 Pac. (2d) 117, was a prosecution for obstructing an officer executing a search warrant; and it was held that the record of the court, in the issuance of the search warrant, was the best evidence of the regularity of its issuance and contents of the affidavit and writ.

In *Bowman v. State*, 73 Tex. Cr. R. 194, 164 S. W. 846, the defendant had previously pleaded guilty to vagrancy and apparently the judgment had become final. At any rate, the opinion of the court seems to be adverse to the contention made in the majority opinion here. Among other things, the court said:

''The duty was upon the state to first show under what section of the vagrancy statute, if this was what was intended the defendant had been charged, and had pleaded guilty, before such a plea, if admissible at all, could have been admissible in this case. The court overruled the objection, and the testimony went before the jury. We think this was error. It was not and could not have been admitted for the purpose of impeaching the defendant's testimony, because it was her written statement and known to the state, and it could not be used as original testimony, unless she had pleaded guilty under this phase of the vagrancy statute. This testimony should not have been permitted to go to the jury.''

*Gittens v. Whelchel*, 12 Ga. App. 141, 76 S. E. 1051, was a civil action to recover a board bill and has no bearing whatever here.

*State ex rel. Brockway v. Whitehead*, 88 Wash. 549, 153 Pac. 349, was on an application for a writ of prohibition, to

prohibit the supplying of a lost record in a justice's court. Nothing said in this case supports the contention here made.

*Whitwell v. State*, 65 Okl. Cr. 178, 83 Pac. (2d) 881, 885, was a prosecution for unlawful possession of intoxicating liquor and the question arose as to the sufficiency of an affidavit to justify the issuance of a search warrant in the case. It was held:

"that the best evidence must be produced of which the nature of the case is capable . . . . " and that "The record itself is the evidence, and the affidavit and the warrant issued thereon is the best evidence of *what they contend.*"

The court also said: "It is evidence from the record that the defendant was convicted, the evidence and the law to the contrary notwithstanding."

If the state desired to prove a confession or admission, counsel should have called witnesses who heard his statement and introduced their testimony before the jury *where they could have been cross-examined.* That would have been primary evidence of such fact. On the other hand, this record was hearsay and secondary evidence and inadmissible under objection.