(No. 6363. March 16, 1937.)

STATE, Respondent, v. LESLIE YOCKEY and JACK ALLEN, Appellants.

[66 Pac. (2d) 111.]

498

A. L. Morgan and E. E. Poulton for Appellants.

Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

BUDGE, J.—Appellants, two boys then 19 and 20 years of age, were charged in an information with first degree burglary, to which, upon arraignment they entered a plea of guilty, and they were then sentenced to the penitentiary for the statutory indeterminate term of one to fifteen years. From the record it appears that prior to pronouncement of judgment the trial court entertained an application and received evidence for the purpose of determining whether or not the statutory penalty should be imposed or a lesser or different punishment inflicted as provided by I. C. A., section 19–2501. Witnesses were examined and their testimony, as well as all the proceedings, were taken by the court reporter and subsequently transcribed. The record discloses that the testimony taken was of such a character as to bring appellants and each of them within the provisions of I. C. A., section 19–2501, which provides as follows:

"Whenever any person shall have been convicted of any crime against the laws of this state except those of treason or murder, and the defendant has never before been convicted of a felony, the court may in its discretion, commute the sentence and confine the defendant in the county jail, or, if the defendant is of proper age, in the state industrial school, suspend the execution of judgment or withhold judgment on such terms and for such time as it may prescribe, and in either event, may put the defendant on probation in the charge of one of the probation officers of the juvenile court of the county in which the court is sitting or other probation officer, or of any other person selected and designated for that purpose."

Neither of the appellants had ever before been convicted of a felony or of any other crime. It further appears that one appellant had for some time prior thereto been enrolled in a C. C. C. Camp and that the other had for some time been employed on a farm in the state of Washington. Evidence was adduced to the effect that, with the exception of the offense to which they entered the plea of guilty, appellants' conduct had not been subject to criticism, that they had no criminal proclivities, and that the property, to wit: jack-knives, they had carried away from the store burglarized, had been returned. The trial court, after hearing the testimony and

arguments of counsel and after personally questioning appellants at some length, all with relation to the mitigation of punishment, made extensive observations, all of which we do not deem it necessary to recite. Among other things the following appears:

"The COURT: It is a most difficult thing for the court to send them to the penitentiary. . . . . In different cases I have taken different action, owing to the peculiar circumstances in each case. . . . . Put these young men in the county jail, and they would have probably six or eight months in the heated period of the year, and would have more confinement than in the penitentiary. . . . . There is one thing the court always considers, and especially of late; there seems to have been a marked increase in crime. While I feel very sympathetic toward young men placed as these young men are, I have to take the good of society into consideration. No matter what judgment is pronounced, it should be in the nature of an example in deterring others from committing crime. I have determined after most careful consideration, and I have to confess I have been very much puzzled—I have finally decided, however, that the law shall simply take its course, and the punishment shall be from the minimum to the maximum.

" . . . . Where I feel as I do at the present time I would be disposed to make a report, a formal report as I am supposed to do, to the Board of Pardons, and upon their good behavior recommend the greatest leniency possible, and asking them to place those young men so they will not be in constant contact with the worse criminals in the penitentiary. . . . . To parole them, these young men, *I believe that no ill would come as far as that is concerned,* if that was done, I believe they will try to do better. . . . . *I believe it is upon the very idea of setting an example before society that I feel it my duty to carry out the law as contemplated by statute, according to the strict letter of the statute.* . . . . If the Board should see fit to pardon them before they have served their time, (1 to 15 years) I shall have no objection. I shall make no recommendation of that kind, but I shall have no objection if they see fit to do it.

"Mr. MORGAN: I would ask the Prosecuting Attorney to stipulate that as far as he knows, and as far as the records here show, these young men are both first offenders before this court; it is their first offense to come before this court, and there is nothing in their record with the exception of the matter to which they have pleaded guilty, that would make it improper that a suspended sentence, or a suspension of judgment in either case apply to their cases.

"The COURT: *I take that for granted,* .... The Court has absolutely no knowledge of these young men ever doing an unlawful act in their life before. That makes no difference. . . . . I have been so wrought up about this matter, and all cases of this kind. . . . . *The primary object is not to punish these boys.* . . . . The principal object is not to punish the offender, it is to set an example for a good many other boys.

"*Without reference whatever to this statute*—without reference to that at all, (I. C. A. sec. 19–2501) . . . . the theory of the criminal law, (is) not to seek vengeance against the wrongdoer, but, abstractly, to deter others from the commission of crime. . . . . We have to have these laws, and they are meant, *their first prime object* is to set an example to others inclined to do wrong."

We have therefore, this situation: Appellants sought to and bring themselves within the provisions of I. C. A., section 19–2501. Under said provisions the court may in its discretion commute the sentence by confining defendant in the county jail, second, if the defendant is of proper age, confine the defendant in the state industrial school, third, suspend the execution of judgment, fourth, withhold judgment on such terms and for such time as it may prescribe, or, fifth, in either event may put the defendant on parole in charge of one of the probation officers or any other person selected and designated for that purpose. The statute was enacted by the legislature to serve a humane purpose—to bring about the rehabilitation of defendants coming within its provisions. We cannot read the record without reaching the conclusion, apparent on its face, that the court did not take into consideration the reason or purpose for the enactment of I. C. A., section 19–2501. The trial court disregarded the statute

and based its denial to favorably consider appellants' application upon grounds not sanctioned by the spirit and purpose of the statute, and not guided or controlled by principles established by law therefor. For instance, as a reason for not invoking the statutory provisions the court says to "put these young men in the county jail . . . . they would have probably six or eight months in the heated period of the year, and would have more confinement than in the penitentiary," which, as we view it, would be no sound or logical reason for disregarding the statute or denying relief under it. Another reason assigned by the court is that there seems to be a marked increase in crime, and the court states "I have to take the good of society into consideration, no matter what judgment is pronounced." Again the court states he was "wrought up about the matter" and all cases of like kind, which might indicate a failure to give full weight and consideration to the intent and purpose of the statute. The court further states that the primary object in sentencing the boys to a term in the penitentiary from one to fifteen years is not to punish these boys,—that the principal object is not to punish the offender, but it is to set an example for a good many other boys and to deter others from the commission of crime, stating that the "first prime object is to set an example to others inclined to do wrong." While punishment inflicted may be said to have for one of its purposes the deterring of others from committing crime, it cannot be said it is the first prime object, nor a logical reason sanctioned by law upon which to deny relief under the provisions of I. C. A., section 19–2501. Neither can it be said that for the good of society the punishment should be inflicted, particularly in this case in view of the fact that the court conceded that no ill would come to parole appellants. While it may be conceded that it is questionable whether the court's discretion would be reviewable had the court exercised a legal discretion within the meaning and spirit of I. C. A., section 19–2501, such question does not arise when the court has failed to exercise a legal discretion such as is within the spirit and contemplation of the statutory provisions. Where, in exercising its discretion or in declining to exercise it, the trial court places its action upon a ground not sanctioned by law the reviewing

court will interfere. (*Rieder v. Rogan,* 12 Fed. Supp. 307; *People v. Lovelace,* 97 Cal. App. 228, 275 Pac. 489; *People v. Freithofer,* 103 Cal. App. 165, 284 Pac. 484; *People v. Miller,* 112 Cal. App. 535, 297 Pac. 40; *People v. Lippner,* 219 Cal. 395, 16 Pac. (2d) 1020, 26 Pac. (2d) 457; *People v. Jones,* 87 Cal. App. 482, 262 Pac. 361.) As was said in *People v. Jones, supra:*

"In order to review the action of the trial court here this court needs but to answer the question, 'Was the order based on any ground which the law sanctions?' and, the answer being 'No,' a reversal of that action is not an interference with any discretion vested by law in the trial court."

It appears from the record herein that the court did not exercise such discretion as is contemplated under the provisions of I. C. A., section 19–2501,—the court was not guided and controlled in the exercise of its discretion by fixed legal principles, but rather by a mental discretion made with reference to criteria not provided for or countenanced by law. The case here affirmatively shows that the court disregarded I. C. A., section 19–2501, acted upon no evidence offered by the appellants bringing them within the provisions of such statute, but based its denial of relief under I. C. A., section 19–2501, upon grounds immaterial to and having no bearing upon the question of appellants' right to parole, commutation, suspension or mitigation of sentence under I. C. A., section 19–2501.

We do not wish to be understood as holding that the discretion of the trial court under the provisions of I. C. A., section 19–2501, when exercised according to established principles of law, is subject to review, but that under the facts and circumstances of this case as affirmatively disclosed by the record it clearly appears that the court did not exercise any such discretion as contemplated under I. C. A., section 19–2501, raising a question of law which may be reviewed on appeal. (Cases, *supra.*)

The judgment is therefore reversed with directions to the trial court to again arraign the appellants for judgment and thereupon to consider appellants' application for parole, suspension or modification and thereafter to proceed with judgment as may be in accordance with law and the views herein expressed.

504

GIVENS, J. (Concurring Specially).—I concur in the conclusion reached because the trial court did not take into consideration all of the reasons for and purposes of the enactment of I. C. A., section 19–2501. I do not think the trial court placed its action upon grounds not sanctioned by law, but that it did not place its actions on all the grounds sanctioned by law which should be considered, nor do I think his statement that because he said he was "wrought up" about the matter indicates that he had a not altogether fair and unprejudiced mind.

HOLDEN, J. (Concurring Specially).—Under section 19–2501, I. C. A., a trial court may, in its discretion, "whenever any person shall have been convicted of any crime against the laws of this state except those of treason or murder, and the defendant has never before been convicted of a felony," commute the sentence by confining the defendant in the county jail, or, if of proper age, in the state industrial school, or suspend the execution of judgment, or withhold judgment on such terms and for such time as it may prescribe, or put the defendant on parole in charge of a probation or other proper officer.

Before the enactment of our probation statute (sections 19–2501 to 19–2507, inclusive) all persons convicted of a felony were, because the trial court had no alternative, sentenced and confined in the state penitentiary, where first offenders were placed in close association with hardened criminals, making restoration to the ranks of law-abiding citizens very difficult, if not impossible. Even a cursory examination of our parole statute discloses that it was enacted for the express purpose of vesting trial courts with jurisdiction, in proper cases, to commute sentences by, for instance, confining a defendant, if of proper age, in the state industrial school, or by placing a defendant on parole in charge of a probation or other proper officer, instead of sending the defendant to the state penitentiary which, common knowledge tells us, is a veritable training school for crime.

The statute in question applies only to cases of first offenders. Whether a person convicted of a felony actually is a first offender and otherwise brings himself within the stat-

ute, involves a question of fact and that, in turn, sets in motion the discretion of the trial court (*Sessions v. Walker,* 34 Ida. 362, 365, 201 Pac. 709). The discretion so set in motion and vested in the trial court by said statute, is not a mental discretion to be exercised *ex gratia,* that is to say, as a matter of grace, or favor, or indulgence, but an impartial discretion, guided and controlled in its exercise by fixed legal principles.

An examination of the record in the case at bar leaves no doubt but that the defendants brought themselves well within the provisions of the statute. Under these facts and circumstances, the trial court could not act arbitrarily nor upon mere whim and caprice, because that would amount to a nullification of the statute.

The case at bar is here on an appeal from the judgment of conviction; therefore, it is my opinion that this court may pass upon the question as to whether the trial court did, or did not, abuse the sound legal discretion vested in it by statute as in other cases, for example, motion for a continuance.

For these reasons I concur in the opinion of Mr. Justice Budge.

AILSHIE, J., Dissenting.—There are several reasons why I think the conclusion reached by the majority of the court is erroneous and an invasion of the discretion vested in the trial judge. However, it can serve no useful purpose in this case for me to enter into discussion of the principles which I think are involved.

The trial judge has exercised his discretion under the statute prescribing the penalty for the offense of first degree burglary (sec. 17–3403, I. C. A.; *State v. Farnsworth,* 51 Ida. 768, 782, 10 Pac. (2d) 295), and likewise under the provisions of sec. 19–2501 and the general statutes conferring discretion on the trial court in criminal cases. (I. C. A., sec. 17–106, 17–107.)

This court makes no attempt to modify the judgment which has already been entered in the case but simply reverses the judgment, and the case goes back with direction for the trial judge to "again. arraign the appellants for judgment and thereupon to consider appellants' application for parole, sus-

pension or modification and thereafter to proceed with judgment as may be in accordance with law and the views herein expressed.'' Now the question arises: Suppose the trial judge enters the same judgment as he entered before, what is this court going to do about it? If this court thinks the judgment is too harsh and wants to modify that judgment, why not do so? On the other hand, why should the legislature vest discretion in the trial judge and this court reverse the exercise of that discretion and simply send the case back for another judgment on the same record?

It is not a sound or judicial basis on which to disturb the exercise of the punitive discretion of a trial court, in pronouncing sentence, to say ''that the court did not take into consideration the reason or purpose for the enactment of I. C. A., section 19–2501.'' It has always been the rule in this court that the reasons given by a trial judge, for making a ruling or entering an order, are immaterial if his ruling or order was correct and was made within the scope of his jurisdiction.

It will, I believe, be a new doctrine for criminologists, sociologists and welfare workers, generally, to learn that a court of last resort has held that ''to deter others from commission of crime'' is not one of the theories on which punishment of criminals is based. It will likewise be equally interesting to learn it is not ''a reason or purpose'' of the law that a judge should ''take the good of society into consideration'' in passing sentence on a confessed or convicted criminal; or that it is not one of the purposes of the punishing of offenders ''to set an example for a good many other boys.'' These, among other things, were stated by the trial judge as reasons which he felt he should consider in passing sentence. He might have stated many other reasons which have been advanced by criminologists, sociologists and law writers (*In re Mallon,* 16 Ida. 737, 745, 102 Pac. 374, 22 L. R. A., N. S., 1123) as reasons for the punishment of crime; but it is no ground for reversing a judgment because he failed to state all or any of his reasons.

In *State v. Neil,* 13 Ida. 539, 554, 90 Pac. 860, this court said: ''It is both the spirit and intention of our laws that

sentence shall be imposed in criminal cases for the protection of society and the reformation of the culprit.'' (*In re France*, 38 Ida. 627, 631, 224 Pac. 433.)