480 P.2d 614

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Randall C. KAUFFMAN, Defendant-Appellant.**

**No. 10608.**

Supreme Court of Idaho.

Feb. 1, 1971.

Smith, Miller & Weston, Caldwell, for appellant.

Robert M. Robson, Atty. Gen., Stewart A. Morris, Asst. Atty. Gen., Boise, and Stephen C. Batt, Pros. Atty., Payette, for respondent.

McFADDEN, Justice.

This is an appeal from a judgment of conviction and commitment to the state penitentiary, following a plea of guilty to the charge of unlawful possession of a narcotic drug, to-wit, marijuana. Randall C. Kauffman, the appellant herein, a young man of twenty years of age, in April 1969 was charged by an information in three separate counts with unlawful possession of a narcotic drug, i. e. marijuana, unlawful transportation of the same drug and with unlawful possession of secobarbital.

Following some preliminary motions, the prosecuting attorney of the county moved to dismiss the charge of transportation of the drug, and the charge of possession of secobarbital. The appellant pleaded guilty to the crime of possession of a narcotic drug, marijuana, and requested a presentence investigation and hearing prior to sentence.

The trial court ordered a presentence investigation. On November 15, 1969 the court held a hearing prior to sentence. At the hearing the appellant presented two witnesses on his behalf. One of the witnesses was one of appellant's instructors at the Treasure Valley Community College. This witness testified that the appellant was an average or above average student and that the appellant had a good attendance record at the school and had created no trouble on the campus. This witness also testified that he noted no signs in the appellant of contempt for authority or for rules and regulations of the college.

The appellant's second witness was the pastor of the church attended by appellant. This minister testified that appellant had been more regular in church attendance since he had married, and that appellant appeared to be a devoted husband. The minister stated that the appellant was a person with whom it was difficult to communicate, and advised the court that he did not think a jail sentence would benefit appellant. This witness strongly recommended that the appellant be placed on probation with strict terms.

Appellant also testified on his own behalf. He frankly advised the court that he had used marijuana and the drug known as LSD in the past and that he had been personally involved in the purchase and the sale of these drugs. He further stated that subsequent to his arrest and while he was out on bond pending the hearing he had used marijuana on a few occasions, but that he had concluded that marijuana was probably no good and he was against its use, at least until such time as it might become legalized. The appellant also testified concerning his home life and aspirations, that he was recently married, his wife was working, and that he had been a student at the Treasure Valley Community College and hoped to transfer to Idaho State University at Pocatello.

In addition to the witnesses that appeared at the presentence hearing, the trial court also considered the presentence report prepared by the probation officer. This report detailed the appellant's personal background, family life, prior experience with drugs, and his reaction to his present difficulties. The report reflected the appellant had no prior convictions for any felony. The officer's report cast serious doubt as to the success of any probation program.

Following the hearing and consideration of the presentence report, the trial court denied appellant's request for probation and sentenced him to a term not to exceed four years in the Idaho State Penitentiary. Appellant has appealed from the judgment and the order of conviction. Basically his sole assignment of error is that the trial court abused its discretion in denying his application for probation in that the trial court failed to consider appellant's rehabilitative needs and the fact that he was a first offender. Appellant asserts that the denial of probation by the trial court was on the single ground that the court believed that appellant would not comply with the terms of any probation. In imposing sentence the trial court stated:

"* * * it is the observation and conclusion of this Court that you have not

been repentant of your actions in any way, that you could not live with restrictions very well. I conclude that you are not a good probation risk; that if you were placed on probation and particularly if, as requested by your lawyer and in good faith, the restrictions were more than the usual, and even the usual, particularly if they were more than the usual, that it wouldn't be long and you would be back in court and you would be serving time as the Court pronounces at this time that you must.

So I am going to reject application for probation, and do as you requested in your interview with Mr. Holland[1] [probation officer], that you do get it over with at this time and go to the penitentiary; and hence the sentence that I am imposing on you at this time."

■ The pertinent provisions of I.C. § 19-2601 authorize a trial court, upon a conviction following a trial or a plea of guilty, to commute the sentence, suspend execution of the judgment, or to "withhold judgment on such terms and for such time as it may prescribe and may place the defendant on probation." The statute itself provides that it is within the discretion of the trial court to employ any of these alternatives. It is well settled in this jurisdiction that the granting or withholding of probation involves a sound legal exercise of the trial court's discretion, and that such an exercise of discretion will be upheld if it is based upon reason rather than emotion. State v. Moore, 93 Idaho 14, 454 P.2d 51 (1969); State v. Gish, 89 Idaho 334, 404 P.2d 595 (1965). Whether the trial court has abused this discretion is a proper issue for review on appeal. State v. Mitchell, 77 Idaho 115, 289 P.2d 315 (1955).

The appellant argues that it was error for the trial court to base its denial of appellant's application for probation solely upon the ground that he might not live up to the conditions of probation. State v. Mitchell, supra; State v. Yockey, 57 Idaho 497, 66 P.2d 111 (1937). In State v. Mitchell, supra, this court held that a trial court may not rely entirely upon the jury's verdict in fixing sentence but must consider other factors as well. Similarly, in State v. Yockey, supra, this court held that it was error for the trial court to deny probation on the ground that to sentence the defendant to prison would deter others from crime. The court pointed out that this was not a logical reason sanctioned by law for denial of probation.

■ This court stated in State v. Mitchell, supra, that in considering an application for probation the trial court must consider: (1) all the facts and circumstances surrounding the offense of which defendant is convicted; (2) whether the defendant is a first offender; (3) the previous actions and character of the defendant; (4) whether the defendant might reasonably be expected to be rehabilitated; and (5) whether it reasonably appears that the defendant will abide by the terms of the probation. In the present case the appellant makes much of the fact that he is a first offender. This is indeed an important factor to be considered, but it is not the sole factor. The evidence in the present case also shows that the appellant continued to use marijuana even after his

---

[1]. "He is not too sure about a probation program. When interviewed on 11–10–69, Randy stated he definitely did not want probation, that he wanted to go to the penitentiary and get it over with, that he felt he can not do a probation, that it would not benefit him, that he didn't want a monkey on his back, as he put it. When advised that probation was a tool to help people, in the form of guidance and counseling and to give them the chance to obtain higher goals, he stated he thought he was doing all right, that he wanted to believe as he believed, that he just didn't feel that he would benefit anything from probation. He further stated that ' * * * I like to wear my hair the way I want to wear it. If I was on probation, you would probably make me cut it. I also want to be able to continue to associate with the friends that I want to associate with, and not be told who I can or cannot associate with.' "

arrest and up to a few weeks before the probation hearing. Moreover, some weight must be given to the appellant's statements to Mr. Holland contained in the probation report to the effect that appellant did not think that he "could do a probation." The appellant attempted at the hearing to state that he did not really understand what probation was at the time he made those statements, but the record adequately reflects that Mr. Holland had explained the procedure to him. Furthermore, Mr. Holland's prognosis that the chances for rehabilitation are "guarded" is entitled to some consideration.

This is a case, then, in which the defendant offered some evidence to the effect that he would be a good prospect for probation, but in which there is also persuasive evidence that the chances for a successful probation are slim. One of the appellant's witnesses, the Reverend Jack Anderson, admitted during his testimony that he really does not know the appellant because the appellant is a very difficult person to talk with. Reverend Anderson stated that he did not understand what motivated the appellant because he would not open up and talk about the things that bother him. This lack of communication between appellant and Reverend Anderson is certainly relevant to the probative value of Reverend Anderson's opinion as to whether the appellant should be placed on probation.

In this case we have a young married man, a first offender, attending college, with aspirations for further education. The trial court had the benefit of an extensive report by the probation officer detailing the defendant's relationship to his family, his wife, his church, his school and the details of the series of events leading to the criminal prosecution. The trial court also had the benefit of testimony of the appellant's witnesses, both of whom gave favorable reports for the appellant. The trial court also had the benefit of observing the appellant on the stand.

In State v. O'Dell, 71 Idaho 64, 225 P.2d 1020 (1950), this court pointed out that the purpose of the probationary statute is aimed at the reformation and rehabilitation of defendants, particularly first offenders and to give him an opportunity to reform and take his proper place in society. See also: State v. Gish, 89 Idaho 334, 404 P.2d 595 (1965). Whether in a particular case the accused is a fit subject to be afforded the opportunity to prove himself under the probationary statute is first addressed to the trial court. Probation is not a matter of right, but it may be granted the defendant through the exercise of sound discretion by the trial court within the ambit of authority conferred by the legislature. Franklin v. State, 87 Idaho 291, 392 P.2d 552 (1964).

Recently the Supreme Court of New Jersey had occasion to consider the problem of sentencing of first offenders found guilty of possessing marijuana for their own use. State v. Ward, 57 N.J. 75, 270 A.2d 1, 1970. Therein the court placed great emphasis upon the policy of the law to reform the youthful offender and stated in effect that generally a suspended sentence is a sufficient penalty for a person convicted for the first time of possessing marijuana for his own use. One cannot help but by sympathetic to this approach, but by so doing that court is establishing a different standard for an isolated type of case. The legislature of this state has established the punishment for this type of offense and that body has also established a system for probation in the proper case. The judicial function requires evaluation of the individual case in the light of the two, i. e., the penitentiary sentence, or the lesser punishment afforded under the provisions of I.C. § 19–2601.

The record before the court in this case reflects that the trial court was fully conversant with the appellant's background. That court had to evaluate the many intangibles that can be gleaned only from the appearance of the accused before that court. It is the burden of the trial court

to render its decision in this type of case based on all the information available, the defendant's demeanor and his actions and response in the courtroom.

In this case the record reflects that the trial court did consider the many factors involved in the resolution of this difficult problem. Under the state of the record it cannot be said that the trial court abused its discretion in denying appellant's application for probation and imposing the sentence it did. The judgment of the trial court is affirmed.

DONALDSON, SHEPARD and SPEAR, JJ., concur.

McQUADE, Chief Justice (dissenting).

The problem of whether or not probation should be granted under facts such as we have here is always difficult for a district judge as well as for the appellate court. Compounding this problem is the questionable procedure of sentencing first offenders for possessing marijuana for their own use. In seeking some direction or at least a temporary solution, the reasoning of a recent New Jersey Supreme Court decision is highly persuasive:

> "We granted certification in this case primarily to establish guidelines for the sentencing of first offenders who were found guilty of possessing marijuana for their own use. We cannot escape the unhappy fact that our youth have been involved with marijuana in disturbing numbers. That this is so does not palliate the wrong. Nor should we be thought to encourage or condone such conduct. The statute should and will be enforced. But it remains the policy of the law to reform the youthful offender. * * * Prison in a case like this will probably be more detrimental to both the offender and society than some other discipline. Even a sentence to a reformatory as suggested by the Appellate Division may be more punitive than is required. We think that generally a suspended sentence with an appropriate term of probation is sufficient penalty for a person who is convicted for the first time of possessing marijuana for his own use." State v. Ward, 57 N.J. 75, 270 A.2d 1.

The reasoning of the New Jersey Supreme Court is analogous to a statement by the Idaho Supreme Court regarding the purpose of our probationary statute:

> "The purpose of the [probationary] statute is the reformation and rehabilitation of a defendant, particularly a first offender, and to give him an opportunity to reform and take his proper place in society." State v. O'Dell, 71 Idaho 64 at p. 69, 225 P.2d 1020 at p. 1022 (1950).

*O'Dell* and the subsequent Idaho cases that have followed or cited it would seem to require us to consider the best interests of the defendant as well as the best interests of society.

The trial court has the power to parole, commute, suspend, withhold or grant probation in its discretion under I.C. § 19–2601 when the court deems such action necessary or expedient. An abuse of such discretion is a question of law reviewable on appeal. State v. Mitchell, 77 Idaho 115, 289 P.2d 315 (1955). The elements a district court must consider in passing upon an application for probation are listed in State v. Mitchell, *supra*, at 118, 289 P.2d 315. The district court, in denying Kauffman's application for probation, seems to have given most weight to requirement number three—likelihood of defendant abiding by terms of probation. Initially in his interview with the probation officer, Kauffman indicated that he did not think he could live under probationary supervision, would rather go to jail and "get it over with." However, defendant's subsequent statements and actions indicate the circumstances and emotional state defendant was in at the time these statements were made and that defendant had since had a change of heart. The very existence of this appeal and the application for probation indicate defendant seriously desires, and inferentially would abide, by the terms of a probation. In any event, a probation

application involving a first offender is almost always given benefit of doubt.

This case raises serious questions concerning the current status of the system for the administration of criminal justice in Idaho. It is a frequent practice of a trial judge to use the probation report or presentence report as the basis for determining the sentence to be imposed. In fact, I.C. § 20–220 requires the trial judge to consider such a report. However, the statute only requires the investigator to "inquire into the circumstances of the offense, criminal record, social history and present condition of the defendant." But the statute, and the individual report in this case, does not go far enough. If a presentence report is truly to be an aid to the court, then it must do more than merely aid the judge in determining what sentence should be imposed. The current approach is predominantly negative and does not serve the total and best interests of the individual involved or society. A proper presentence report should contain positive constructive and concrete suggestions on how the individual may best be rehabilitated so that he may at least function adequately in society after the state penal and "correction" systems ·are through with him. That is, along with a more constructive approach to presentence investigations and reports, a follow-up procedure should also be recommended.

The weight and finality of an adverse or negative presentence report with no affirmative suggestions by the investigator is well exemplified in this case of Randall Kauffman. Once Kauffman had made the adverse statements to the probation investigator a few weeks before his trial, his fate was determined. As is required by case law, the court allowed Kauffman a chance to refute or rebut his previous statements made in the presentence investigation. But even though Kauffman twice explained the circumstances under which the prior statements were made and that he had had some time to think about his conduct in the past and concluded that he had been wrong, the trial court nevertheless ignored the defendant's current statements and relied upon the negative presentence report.

As was stated in State v. Gish, 89 Idaho 334, at 341, 404 P.2d 595 (1965):

"The application for probation under the provisions of I.C. § 19–2601 is not in the form of an application for mitigation of punishment, * * * but is an application for the exercise of the law's humane provisions to allow a person an opportunity to become rehabilitated under proper control and supervision."

Kauffman will require rehabilitation after his penitentiary experience. This same probation officer may be called upon to take on a much larger task when the defendant is returned to society by the way of parole. The curious dilemma is to resolve, under these circumstances, the future of Kauffman and his place in this society.

Under the facts of this case, I conclude that a sentence to the state penitentiary, no matter how short, would obviously not enhance the defendant's reformation and rehabilitation. Nor am I able to comprehend how society would be benefited by the existing sentence.