*596 P.2d 110*

The STATE of Idaho,
Plaintiff-Respondent,

v.

Allen ADAIR, Defendant-Appellant.

No. 12723.

Supreme Court of Idaho.

June 14, 1979.

William H. Foster, Grangeville, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Lynn E. Thomas, Eugene A. Ritti, Deputy Attys. Gen., Boise, for plaintiff-respondent.

SCHROEDER, Justice Pro Tem.

The issue presented on appeal is whether the district court abused its discretion in sentencing the defendant-appellant to a maximum term of imprisonment for escape.

From the proceedings in the district court it appears that on May 17, 1977, the appellant, Allen Adair, and another inmate were charged with escape from the North Idaho Correctional Center while in the custody of the Idaho State Board of Corrections. The appellant waived preliminary hearing on the same day and appeared in district court the following day. At that time he entered a plea of guilty to the escape charge, apparently upon the understanding that a grand larceny charge for the theft of a pickup used in the escape would be dismissed. Upon acceptance of the plea the appellant waived delay in sentencing through his attorney. The district judge sentenced him to a maximum term of five years to be served consecutive to the five year burglary sentence the appellant was serving at the time of the escape, the court having retained

jurisdiction for 120 days in that matter. At the time sentence was pronounced for the escape charge the district judge made the following statement of the record upon which he relied:

"THE COURT: I'd like the record to show that I am quite familiar with Mr. Adair's background and prior record by reason of Case No. 12555 entitled State of Idaho, Plaintiff, versus Allen Adair in which case I sentenced the defendant on the 6th day of April, 1977, to the Idaho Board of Corrections for a period of time not to exceed five years and retained jurisdiction. The record in that case will show that I have had numerous reports and both juvenile and adult data presented to the Court before the sentencing in that case. So if there is nothing further that the defendant wishes to present to the Court as having occurred since the 6th day of April, 1977, the Court is prepared at this time to pronounce sentence in this case."

The appellant maintains that the district court abused its discretion in sentencing him to the maximum term of imprisonment for escape, asserting that the record is insufficient to justify the court in sentencing him to five years and his co-defendant to only one year. The defendant claims that he was entitled to be advised what record the court was relying on in order to refute or explain the record. *State v. Rolfe*, 92 Idaho 467, 444 P.2d 428 (1968). Further, he maintains that pronouncing sentence after a guilty plea is erroneous if there is no inquiry in accordance with I.C. § 19–2515.

There are several problems with the appellant's position. First, the district judge made specific reference to the record upon which he relied, taking judicial notice of the proceedings against the appellant in Case No. 12555 which had been before him little more than a month before. Further, the court advised the defendant of his right to offer evidence in mitigation. The defendant expressly waived these rights:

"THE COURT: I want each of you to also understand that you have the right to have a delay before sentence is pro-

nounced in this case. The purpose of this would be to get each of you an opportunity to present any witnesses or information to the Court in the way of litigation (sic) that would tend to show that the crimes are not as serious as it might appear, that any information that might be beneficial to either one of you.

Now, only if you waived your right to a delay in sentencing could the Court proceed at the present time. In other words, you are entitled to at least two days or longer if you need it before sentence is pronounced.

Do you desire any kind of a mitigation hearing in this matter, Mr. Foster? MR. FOSTER: Your honor, Mr. Adair would waive the time for sentencing. However, Mr. Mann has indicated that he would like a presentence investigation as it relates to him."

Subsequently the court made inquiry to determine if there were any reasons why sentence should not be pronounced. Counsel for the appellant indicated there was no reason:

"THE COURT: Does the Defendant have anything further before I proceed to pronounce sentence?
MR. FOSTER: No, Your Honor.
THE COURT: Do you know of any reason why I should not at this time pronounce sentence on the escape charge?
MR. FOSTER: No, Your Honor."

Under the circumstances shown by the record it appears that the district court advised the parties of the record upon which it relied. The defendant had been before the court in the recent past and had been sentenced by the same judge little more than a month before, a fact known to all parties. The district court afforded appellant the opportunity to offer evidence in mitigation. That opportunity was declined. There was no objection made to the district court's method of proceeding. There is no abuse of discretion shown.

Based upon the foregoing the judgment of the district court is affirmed.

SHEPARD, C. J., BAKES, J., and SMITH, J., Pro Tem., concur.

BISTLINE, Justice, dissenting.

The issue to be reached here in essence distills down to whether the punishment fits the crime. I am persuaded that it does not, and briefly state my view.

The district judge who here sentenced Adair was the same district judge who had but six weeks earlier considered Adair as a fit candidate for probation, and accordingly retained jurisdiction to again consider that possibility following the 120-day stint at the Cottonwood facility. Although criminal justice should be speedily administered, it appears to have been overly swift here where the defendant was submitted to be sentenced on the very next day after he escaped. Acknowledging that the record demonstrates an extremely careful district court inquiry into Adair's waiver of a preliminary hearing and, in turn, the voluntariness of his guilty plea, nonetheless, and although such is not an issue on appeal, it would seem that justice might have been better served at a lessened pace.

It is clear from the reporter's transcript that intertwined with the meting out of justice for Adair's escape was the court's natural disappointment in Adair's failure to live up to the court's expectations in retaining jurisdiction so as to consider probation on the burglary charge.[1] Notwithstanding that the only charge to which Adair pleaded guilty was that of escape, the district judge

---

1. With respect to the burglary case against Adair, the district court expressed his decision to waive that retained jurisdiction saying:

By, or course, Mr. Adair, committing the crime of escape hereby attempting to leave the North Idaho Correctional Center, you demonstrate to me that the Court made a mistake in recommending that you be sent to the Cottonwood Center for the One Hundred Twenty day jurisdiction. It's obvious that you're not willing to stay with the program and try to live up to the rules and regulations that they impose upon you at that place for the One Hundred Twenty days that the Court retained jurisdiction. There is just no possibility that the Court could consider probation following that period of One Hundred Twenty days in this case.

was informed that Adair, following his unauthorized departure[2] from the Cottonwood facility, was charged with grand larceny of a pickup. There is some doubt in my mind that any knowledge of this other charge should have been properly before the court in passing sentence for the single offense of escape.

The foregoing points, concededly not raised as appeal issues, do serve to at least heighten the inquiry we are asked to make as to the sentence imposed. Basically the appeal is premised on the contention that the *maximum* sentence should not have been imposed for the particular escape of which Adair was guilty.

Our obligation on an appeal challenging a sentence as excessive. is to review the record and, utilizing the collective judgment of five judges,[3] affirm where it is proper sentence, but where it is excessive, to reduce it. *State v. Adair*, 99 Idaho 703, 587 P.2d 1238 (1978).

Here we have very little record to review. In making sentence review, important and proper concerns are the age and endowment of the defendant.[4] That information we do not have. A respectable sentence review cannot be competently made without having at least some information of a defendant's history. Here we have very little to go on. At best we know, inferentially, that at one time the district court did consider Adair as probational. An inference to be drawn from that inference is that Adair was reasonably young and was a first offender. More than that on Adair, we have not.

On the particular crime for which he is now sentenced to five years, to commence running only when his burglary term has been served, we know nothing more other than that he walked out of the Cottonwood facility, in the company of another, and was caught leaving the country. In fleeing the facility he apparently did it no damage, nor injured any person. His leaving was a crime only because the law has declared it so[5]—*malum prohibitum*, as opposed to conduct which is inherently criminal—*mala in se*. Not here raised, and apparently well settled is the constitutionality of the law. *Ex parte Knapp*, 73 Idaho 505, 254 P.2d 411 (1953); *In re Mallon*, 16 Idaho 737, 102 P. 374 (1909), of which cases the latter continues to remind that there is a distinction to be drawn between a peaceable and nonpeaceable escape, and due regard should be given to the heinousness or gravity of the act made a crime.[6]

2. The only information in a most sparse record shedding light on the nature of Adair's escape is the information stating that while in custody, he escaped by fleeing, and the prosecution's statement to the court that Adair was present for an actual head count at 9:30 in the evening, but had walked off shortly afterward.

3. Chief Judge Simon Sobeloff of the Fourth Circuit Court of Appeals at a Symposium of the Judicial Conference of the Second Circuit Court of Appeals:

"[T]he whole intricate network of protections and safeguards which were . . . [the defendant's] at the trial vanishes and gives way to the widest latitude of judicial discretion. . . . Nine out of ten defendants plead guilty without trial. For them the punishment is the only issue, and yet we repose in a single judge the sole responsibility for this vital function."

4. In *State v. Behler*, 65 Idaho 464, 146 P.2d 338 (1944) the Court declared that a defendant, though mentally responsible in the legal sense, in the interests of justice ought not to be held as accountable if possessed of less than a normal mind.

5. Mere escape was also a crime under the common law which goes back so many years that confinement was a punishment more apt to be for political reasons than for criminal offense. In the early days of the common law, stealing property of a value of three shillings was a capital offense, as were many other offenses— no confinement necessary. For an enlightening documentation of the development of confinement as a punishment, see *United States v. Ramirez*, 556 F.2d 909 (9th Cir. 1976).

6. To attempt escape from confinement is not only not inherently bad, but is a product of pure instinct. Yielding to the instinct is an exercise of poor judgment. Yet, in other settings our youth of today are taught that escape is not merely honorable, but required. The Military Code of Conduct, Art. III, is a directive to any captured military person to "make every effort to escape and aid others to escape." Older persons, and even the younger who are endowed with good judgment, will have little

In *State v. Ogata*, 95 Idaho 309, 508 P.2d 141 (1973) the Court dealt exhaustively with "the role of punishment in the administration of criminal justice," saying:

[I]t seems clear that at least three purposes of the enactment of criminal statutes are:

1. To express concisely what behavior society considers to pose an unjustifiable threat of harm to individual or public interests.

2. To warn a potential offender of the consequences which he can expect if he violates the law.

3. Thereby to prevent or reduce the incidence of the proscribed type of conduct.

To the extent that the view is accepted that one of the primary purposes for the enactment of criminal laws is to deter members of society from conduct which is deemed harmful, it is inconsistent to hold that enforcing those laws by inflicting the legislatively prescribed punishment can never be motivated by deterrence. 'General deterrence' continues to be a proper consideration in the imposition of punishment, though certainly not the only criterion.

*Id.*, 95 Idaho at 316, 508 P.2d at 148.

Earlier in the same opinion, the Court listed the four objectives of punishment: protection of society, deterrence, rehabilitation, and retribution, and went on to say:

"The primary consideration is, and presumptively always will be, the good order and protection of society. All other factors are, and must be, subservient to that end. Important as are the humanitarian considerations affecting the accused, his family and other relatives, and the importance to society of rehabilitation itself, such considerations cannot be allowed to control or defeat punishment, where other factors are ignored or subordinated to the detriment of society."

*Id.*, 95 Idaho at 315, 508 P.2d at 147, citing *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1957).

trouble in distinguishing between escape from an enemy and escape from confinement by their own government. Many of today's youth,

Very difficult to envision here is how it would be to society's detriment were Adair not handed the maximum sentence which might be imposed for this particular escape. He is already penalized by losing his chances for probation. There is, however, within the confines of society's protection also a flavor, at least, of the element of deterrence. Deterrence, here, assuming its validity, contributes little, if anything, toward society's protection. Where the criminal conduct is robbing a bank, burglary, rape—these are the acts against the doing of which society needs and is entitled to protection. A stiff sentence meted out to a bank robber may serve to affect the thinking of others similarly inclined. That is deterrence, and hopefully it benefits the public by slowing down those who are at loose in society who give consideration to the commission of such offenses—where some part of society is going to be injured, and seriously.

When the members of society learn from their newspapers, radios, or televisions that the crime of forcible rape committed after gaining illegal entry into a private house has been punished with a severe sentence, certain it is that society will approve—not simply because the depraved offender is being adequately punished, but because of the expectation that others so inclined are put on such notice that they may be dissuaded from similar acts of outrage and violence. Likewise, where the news account is of an older couple invaded in the privacy of their own home, brutalized and robbed, other citizens in other homes are given some hope of freedom from fear of such violence when a severe sentence is meted out as the punishment for such violence. Hopefully society hopes that the message is not lost on other bandits contemplating such criminal trespasses. This is readily seen as deterrence at work, and the benefit is twofold, in both discouraging the would-be offender who might otherwise

however, grow up in an environment where law and order in their minds are "the enemy."

prey upon the public, and in affording the public itself some reason to hope that they do not have to live in fear, even while within the sanctity of their own homes. I endorse the concept most heartily. But it is not readily understood how society on the whole will see itself as benefiting where the severe sentence imposed is not for banditry, not for rape, not for pushing drugs, but for the relatively inoffensive offense of walking away from a correctional facility, and the offender is, as appears to be the case here, an inexperienced youth whose burglary was perhaps a first offense, the details of which burglary we are not furnished.

The only deterrence element found here is that the duties of those state officials charged with the confinement of prisoners are undoubtedly facilitated by the threat of the escape statutes. And, in given instances it may be well indeed a useful device with which to insure the longer and continued confinement of depraved and vicious persons who by their escapes subject themselves to enhanced servitude. Here, however, we do not see from the scant record that Adair was such a person.

It may be that policy considerations require that, like breaking the rules, breaking the escape law requires some punishment, else all confined be so inclined. However, having in mind that the punishment fit the crime, it would seem that a one-year sentence, as was meted out to Adair's partner-in-escape, would have adequately served as an intended caution to the other Cottonwood inmates that going AWOL is a big mistake, and one for which a price must be paid. The five years assessed here may very well be the determinative factor that insures Adair may never be turned in the right direction. In my view, the sentence is not only of no benefit to him, but how society is served is equally doubtful.